# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.                                                                                          Civ. No. 16-316

837 PIECES OF COUNTERFEIT
NATIVE AMERICAN JEWELRY,

77 PIECES OF COUNTERFEIT
NATIVE AMERICAN JEWELRY,

    *Defendants-in-rem.*

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action to forfeit and condemn to the use and benefit of the United States of America property that is derived from proceeds of a violation(s) of 18 U.S.C. § 542 is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C); property imported in violation 18 U.S.C. § 545 is subject to forfeiture pursuant to 18 U.S.C. § 545; and property imported in violation of 19 U.S.C. § 1304 is subject to forfeiture pursuant to 19 U.S.C. § 1595a(c)(2)(E).

### DEFENDANT *IN REM*

2. The defendant *in rem* consists of the following:

    a.    6,959 Pieces of Counterfeit Native American Jewelry; and
    b.    91 Pieces of Counterfeit Native American Jewelry (hereafter collectively referred to as "Defendant Property").

3. The Defendant Property was seized by the United States Fish and Wildlife Service and the Federal Bureau of Investigation on October 28, 2015, at Albuquerque, in the District of New Mexico.

4. The Defendant Property is now, and during the pendency of this action will be, in the jurisdiction of this Court.

## JURISDICTION AND VENUE

5. The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

6. Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district. Upon the filing of this complaint, the Defendant Property will be arrested by execution of a Warrant for Arrest *In Rem* in the District of New Mexico.

## FACTS

7. Since 2012, the Department of the Interior, United States Fish and Wildlife (USFWS) agents, and the Indian Arts and Crafts Board (IACB) has been conducting an investigation of the sale of counterfeit Native American jewelry. USFWS Special Agent (SA) Russell Stanford has been attached to the IACB since March of 2012. SA Stanford is responsible for investigating violations of the Indian Arts and Crafts Act. SA Stanford's investigation revealed Sterling Islands and other businesses associated with Sterling, work in concert with others in and around the State of New Mexico to design, import and fraudulently sell counterfeit Native American jewelry in violation of the Indian Arts and Crafts Act, specifically 18 U.S.C. § 1159.

8. This Act is designed to prevent products from being falsely marketed as "Indian Made" when the products are not, in fact, made by Indians as defined by the Act. Subsection (a) of 18 U.S.C. § 1159 provides:

> (a) It is unlawful to offer or display for sale or sell any good, with or without a Government trademark, in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization, resident within the United States.

9. The investigation revealed approximately ten retail and wholesale businesses that sold Sterling's counterfeit Native American-style jewelry in New Mexico. These businesses, primarily located in areas of high tourist activity, sell Native American-style jewelry, manufactured in the Philippines and imported by Sterling, as genuine Native American-made jewelry.

10. A.N. Jewelry Company has purchased over $15,000 in jewelry from Sterling and by admission, operates in the "... jewelry, precious stones and precious metals" industry. Arafat Nimer owns A.N. Jewelry Company, as well as two residences located at 2300 and 2304 Cagua NE, Albuquerque, NM 87110.

11. On October 19, 2014, SA Stanford attended the Albuquerque Flea Market located at the intersection of Louisiana Blvd. and Central Ave. SA Stanford received information that jewelry similar to the pieces Sterling had imported, was being sold by an unidentified vendor at the market.

12. While walking through the market booths, SA Noel Wagner and SA Stanford located a vendor named Mohammad Manasra. SA Stanford observed Manasra selling jewelry consistent with the Sterling imported jewelry. Upon closer inspection, SA Stanford recognized several of the pieces by their overall design, markings, and stamped initials, as consistent with Sterling imported jewelry.

13. Manasra had several cases, filled with Native American-style jewelry, displayed at his booth. Additionally, a white cargo van was parked behind the area where the jewelry was being displayed. This van, hereafter referred to as "Original Market Van," was registered to Manasra, 2304 Cagua Drive Northeast, Albuquerque, New Mexico. The residential address is the same registered address as the official business address of the "A.N. Jewelry."

14. At the Albuquerque Flea Market on October 19, 2014, SA Stanford observed Manasra retrieve several plastic bags containing jewelry from the Original Market Van. The Original Market Van contained a large inventory of packaged jewelry, secured in a cardboard box. The jewelry Manasra retrieved from the van was consistent with the Sterling imported pieces that SA Stanford had observed previously. Specifically, SA Stanford observed a ring consistent with a Sterling imported ring. The ring had the "cornrow" design and stamped leaf symbol on the inside of the ring.

15. Manasra told SA Stanford that he gets all his jewelry from Gallup, NM. He said that his brother buys the jewelry. When questioned about which tribes make the jewelry, Manasra motioned to jewelry in the cases and pointed out pieces that he claimed were made by the Navajo and Zuni. SA Stanford asked to see the "cornrow" ring for a second time. Manasra described it as "corn cut." SA Stanford asked if the ring was a Zuni item, but Manasra corrected me and said, "No, that's Navajo." SA Stanford asked to see another ring displayed in one of the cases which he knew to be consistent with a Sterling import. SA Stanford recognized the overall design of the ring and the "OY," initials on the inside of the ring. Manasra stated that the ring was, "Navajo . . . yeah." This ring was identical to one previously documented as imported by Sterling.

16. Manasra told SA Stanford that he comes every weekend to the flea market and has been selling at the flea market and in Santa Fe for twenty-two years.

17. Manasra then picked out a Kokopelli (Hopi Deity) design pendant and earring set and gave them to SA Stanford. The pendant had a decal affixed to one side that read, "Made in Philippines." Without confronting Manasra about the decal, SA Stanford asked if the piece was also Zuni to which Manasra replied, "Yeah." SA Stanford observed the same leaf symbol stamped on the inside of the pendant as those observed on the Sterling imports. Manasra sold the items to SA Stanford in violation of 18 U.S.C. § 1159. Before SA Stanford left the booth, he observed several other items offered for sale by Manasra that were consistent with Sterling Imports.

18. On July 2, 2015, SA Ariel Vazquez conducted surveillance and observed a newer model, white cargo van, parked in the driveway of Manasra's 2300 Cagua residence, (hereafter, "New Market Van"). The New Market Van is registered to Manasra.

19. SA Stanford observed Manasra using the New Market Van, consistent with the use of the Old Market Van on the following dates: July 4, 2015, August 17, 2015, August 23, 2015, August 30, 2015 and September 6, 2015. SA Stanford and other agents observed the New Market Van at the flea market with items consistent with Sterling Imports, at Sterling Islands and at 2300 and 2304 Cagua Drive.

20. A federal search and seizure warrant was executed on October 28, 2015, at 2300 Cagua Drive, Albuquerque, New Mexico. Agents seized 837 pieces of counterfeit Native American jewelry. The counterfeit jewelry is described in more detail below:

| | | |
|---|---|---|
| 1 | 400 | Counterfeit Native American Earrings, |
| 2 | 62 | Counterfeit Native American Rings, |
| 3 | 357 | Counterfeit Native American Pendants, |
| 4 | 4 | Counterfeit Native American Necklaces, |

    5  14  Counterfeit Native American Bracelets

21. A federal search and seizure warrant was executed on October 28, 2015, at Arafat Nimer's residence located at 2304 Cagua Drive, Albuquerque, New Mexico. Agents seized 77 pieces of counterfeit Native American jewelry. The counterfeit jewelry is described in more detail below:

    1  72  Counterfeit Native American Earrings,
    2  4   Counterfeit Native American Necklaces,
    3  1   Counterfeit Native American Pendant

22. During the execution of a federal search warrant at 2304 Cagua Dr. NE, Arafat Nimer told USFWS SAs Vasquez and Eric Jumper that he houses more imported jewelry at his residence at 2300 Cagua Dr. NE. He invited the agents to inspect the jewelry at his residence and admitted that some of the jewelry he purchased was from Sterling Islands and that he knows it is manufactured in the Philippines. Some of the jewelry he purchased from Indonesia and some he purchased from Mexico. Arafat Nimer gave the agents written consent to enter the residence with him. He admitted that none of the Sterling imported jewelry is marked with the country of origin and allowed agents to confirm that the jewelry was not marked with the country of origin. Arafat Nimer also told agents that he and Mohammad Manasra maintained business records related to the imported jewelry in his residence.

## First Claim For Relief

23. The United States incorporates by reference the allegations in paragraphs 1 through 22 as though fully set forth.

24. 18 U.S.C. § 981(a)(1)(C) provides, in part, of the forfeiture for any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 542 enumerated among other crimes, or conspiracy to commit such offense.

25. 18 U.S.C. § 542 prohibits the introduction or attempt to introduce into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance.

26. Defendant Counterfeit Jewelry is the proceeds of violation(s) of 18 U.S.C. § 542 or is the proceeds traceable to such property and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF

27. The United States incorporates by reference the allegations in paragraphs 1 through 22 as though fully set forth.

28. 18 U.S.C. § 545 prohibits the importation into the United States of any merchandise contrary to law or the receipt, concealment, purchase, or sale or the facilitation of the transportation, concealment, or sale of such merchandise after importation.

29. Defendant Counterfeit Jewelry was introduced into the United States or received, concealed, purchased, sold or transported in violation of 18 U.S.C. § 545 and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 545.

## THIRD CLAIM FOR RELIEF

30. The United States incorporates by reference the allegations in paragraphs 1 through 22 as though fully set forth.

31. 19 U.S.C. § 1304 requires that every article of foreign origin (or its container) imported into the United States be marked in a conspicuous place with the name of the country of its origin.

32.     Defendant Counterfeit Jewelry was marked intentionally in violation of 19 U.S.C. § 1304 and is thus subject to forfeiture to the United States pursuant to 19 U.S.C. § 1595a(c)(2)(E).

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

(1)     That, pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), a Warrant of Arrest *In Rem*, in the form submitted with this Complaint, be issued to the United States Attorney General or to any duly authorized law enforcement officer by the Clerk of this Court, as the defendant personal property is already in the possession, custody or control of the United States;

(2)     That the Court direct any and all persons having any claim to the defendant properties to file and serve their Verified Claims and Answers as required by 18 U.S.C. § 983(a)(4) and Supplemental Rule G, or suffer default thereof;

(3)     That the defendant properties be forfeited and condemned to the use and benefit of the United States of America; and

(4)     That plaintiff be awarded its costs and disbursements in this action and such other and further relief as this Court deems proper and just.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

STEPHEN R. KOTZ
KRISTOPHER N. HOUGHTON
Assistant U.S. Attorneys
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the US Fish Wildlife and Service who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 4/19/16

Russ Stanford, Special Agent
US Fish and Wildlife Service